GRINNELL CORPORATION, Plaintiff,

and

The Chamber of Commerce of the United States of America and the Greater Providence Chamber of Commerce, Plaintiffs-Intervenors,

v.

Mary C. HACKETT, Director of the Department of Employment Security of the State of Rhode Island, and John J. Affleck, Director of the Department of Social and Rehabilitative Services of the State of Rhode Island, Defendants,

and

United Steelworkers of America, AFL–CIO, Defendant-Intervenor.

Civ. A. No. 4926.

United States District Court,
D. Rhode Island.

Feb. 13, 1976.

George M. Vetter, Jr., Hinckley, Allen, Salisbury & Parsons, Providence, R. I., for plaintiff.

Julius C. Michaelson, Atty. Gen. of the State of Rhode Island, Louis B. Rubinstein, Chief Legal Officer, Dept. of Employment Security, Providence, R. I., for defendants Hackett and Affleck.

Rudolph L. Milasich, Jr., Pittsburgh, Pa., Sanford H. Gorodetsky, Providence, R. I., Warren H. Pyle, Boston, Mass., for defendant-intervenor, United Steelworkers, AFL–CIO.

Guy J. Wells, Providence, R. I., Gerard C. Smetana, Washington, D. C., for plaintiffs-intervenors, Chamber of Commerce of USA and Greater Providence Chamber of Commerce.

OPINION and ORDER

PETTINE, Chief Judge.

The plaintiff Grinnell Corporation initiated this case in May of 1972 to challenge the payment by the defendants of unemployment benefits to striking employees as required by the Rhode Island Employment Security Act, R.I.G.L. § 28–42–1 *et seq.*, alleging that these payments deprived Grinnell of its federal right to engage in collective bargaining without the interference of state subsidies to striking employees. The travel of the case has been long and complicated and need not be reviewed here. The matters presently before this court are the motion of the defendant intervenor United Steelworkers of America for *de novo* review by this court of the magistrate's order denying reconsideration of entry of a protective order and denying judicial leave to take certain depositions, and the motions of the plaintiff and the three persons whose depositions are sought to dismiss the Steelworkers' motion as untimely and alternatively to strike the Steelworkers' motion insofar as it seeks review *de novo*.

## I

Shortly after this case was commenced in 1972, this court heard the plaintiff's motion for a preliminary injunction. At that hearing Aarmand J. Phieblott, Jr. and Ronald M. Cowin testified as expert witnesses for Grinnell on the impact of the payment of unemployment compensation benefits to strikers. Both men had been associated with the Industrial Research Unit of the Wharton School of Finance and Commerce of the University of Pennsylvania and were experts by virtue of a study conducted by them beginning in 1970 and published in April, 1972 by the Industrial Research Unit as Report No. 6, entitled *Welfare and Strikers: The Use of Public Funds to Support Strikers.* This study was introduced as an exhibit by Grinnell. Also introduced by Grinnell was an affidavit of Dr. Herbert R. Northrup, Director of the Industrial Research Unit, expressing his expert opinion on the same topic.

In the spring of 1975, after extensive proceedings in this case that included the appeal of several issues to the Court of Appeals for the First Circuit, the Steelworkers noticed the depositions of Phieblott, Cowin, and Northrup and had served upon them subpoenas *duces tecum.* Grinnell moved for a protective order, and on May 23, 1975, the United States Magistrate heard the motion under § 13(b)(6) of the Standing Order of this Court for the Utilization of United States Magistrates and granted the protective order from the bench. The magistrate found that the deponents were experts and not actors in the events giving rise to the strike and accordingly that the Steelworkers could not depose them as of right, although he gave the Steelworkers leave to make a showing of exceptional circumstances under Rule 26(b)(4)(B) of the Fed.R.Civ.P.[1]

The Steelworkers moved before the magistrate for reconsideration of the protective order and, in the alternative, for permission to depose the three men as experts under Rule 26(b)(4)(B). The magistrate heard these motions on June 17, 1975, and from the bench denied reconsideration of the protective order, ruled that the Steelworkers had failed to make a showing of exceptional circumstances under Rule 26(b)(4)(B), and found as a fact that "it is more probable than not" that in seeking these depositions the Steelworkers were carrying out a private purpose and not a purpose of the litigation. The magistrate's written order was filed on July 3, 1975, and the Steelworkers filed their motion for *de novo* reconsideration on July 11.

## II

Grinnell and the three deponents raise two procedural objections to the Steelworkers' appeal from the magistrate's order. They argue that the Steelworkers' motion was not timely filed and alternatively that review by this Court cannot be *de novo.*

Sec. 13.1 of this Court's Standing Order for the Utilization of United States Magistrates, as amended on April 30, 1973, provides as follows:

"13.1. *Reconsideration of Magistrate's Ruling by District Judge.*

A magistrate's ruling on a motion, not incident to the exercise of his trial jurisdiction, shall be final and conclusive unless a party thereto moves for reconsideration by a district judge. A motion for reconsideration shall be made within (5) days of the magistrate's ruling. Reconsideration shall not be *de novo* but shall be the same as an appeal on a question of law."

Grinnell and the deponents are clearly correct in their contention that review of the magistrate's order cannot be *de*

---

1. Rule 26(b)(4)(B) provides:

"a party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 36(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."

*novo.* The Steelworkers' motion shall therefore be construed as one for reconsideration of the magistrate's order in a manner not inconsistent with § 13.1 of the Standing Order.

Grinnell and the deponents are also correct that the Steelworkers' motion was filed more than (5) days after the magistrate's order was filed. The magistrate's order was filed on July 3, 1975, and the Steelworkers' motion on July 11. Computations of time, however, must be made in accordance with Rule 6(a) of the Fed.R.Civ.P., which provides in part, "when the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Furthermore, "the day of the act, event, or default from which the designated period of time begins to run shall not be included." In computing the five day period in this case, July 3 is excluded as the day of the triggering event, the magistrate's filing; July 4 is excluded as a legal holiday; and July 5 and 6 are excluded because they fell on a Saturday and Sunday. Thus, the 5 day period actually began on July 7, and since the Steelworkers' filed their motion on July 11, the fifth day, the motion was timely filed.

Grinnell and the deponents contend in the alternative that the five day period for filing the motion to reconsider should begin to run on the day after the magistrate issued his ruling from the bench, June 17, rather than on the day after the written order was filed, July 3. Such a construction of § 13.1 of the Standing Order would be inconsistent with Local Rule 23(c), however, which provides that absent certain circumstances which are not present in this case, all

2. Local Rule 23(c) provides:

   "Preparation and filing of formal orders. Unless the court otherwise directs, all appealable orders and all other orders orally announced in open court in any cause, shall be prepared in writing by counsel for the successful party and served and lodged with the clerk within five days. No such order will be signed unless opposing counsel shall have endorsed thereon an approval as to form, or shall have failed to serve and file

orders orally announced in open court shall be prepared in writing and entered into the official record.[2] The delay from June 17 to July 3 in entering the written order here does not appear unusually long, particularly since Local Rule 23(c) provides for two five-day periods during which the parties can draft or object to proposed written formulations of orders announced orally, and neither Grinnell nor the deponents have shown that they were in any way materially prejudiced by the delay. Accordingly, the motion to dismiss · as untimely the Steelworkers' motion for reconsideration of the magistrate's June 17 ruling is denied.

### III

One basis of the Steelworkers' challenge to the magistrate's ruling is that the magistrate misinterpreted and therefore misapplied Rule 26(b)(4) of the Fed.R.Civ.P., concerning the scope of discovery of facts and opinions held by experts. While I have ruled that this Court's review of the magistrate's ruling is not *de novo,* the impact of that decision lies primarily upon review of findings of fact, which must be accepted unless clearly erroneous. *Cf.* Fed.R.Civ.P. 52(a); *DeCosta v. Columbia Broadcasting System, Inc.,* 520 F.2d 499, 509 (1st Cir. 1975). The question immediately at hand, that of interpreting Rule 26(b)(4), is a question of law subject to the "full review" of this Court. *DeCosta, supra,* 520 F.2d at 509.

Rule 26(b)(4) provides in pertinent part:

"*Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or de-

with the clerk, within five days after service of a copy thereof, as shown by endorsement on the original or by affidavit of service, a statement of objections to form and the grounds thereof.
If objections to form or substance are served and filed within the time prescribed herein, the court may thereafter require counsel to appear for a hearing thereon or may sign the document as prepared or as modified."

veloped in anticipation of litigation or for trial may be obtained only as follows:

(A) . . .

(B) . . . " 3

The magistrate found as a fact, not disputed by the Steelworkers, that the three deponents, Professor Phieblott, Mr. Cowin and Dr. Northrup, were experts. The Steelworkers contended, however, that they sought to depose these individuals not in their capacity as experts but rather as actors in the preparation of a piece of evidence. The magistrate rejected this contention, finding that the individuals were expert witnesses for the purposes of the depositions sought. Therefore he ruled in accordance with Rule 26(b)(4) that the depositions of these men as experts could not be taken by right under Rule 26(b)(1) but could be taken only if the requirements of Rule 26(b)(4)(A) or (B) were met, which, he found, was not the case here.

It is my conclusion that the magistrate read Rule 26(b)(4) too narrowly. The very words of the rule provide that the restrictions imposed upon the discovery of facts known and opinions held by experts shall be applied only to those facts and opinions "acquired or developed in anticipation of litigation or for trial." It is undisputed that the Steelworkers sought to conduct these depositions solely to obtain background information concerning Report No. 6, *Welfare and Strikes: The Use of Public Funds to Support Strikers.* It is further undisput-

ed that Report No. 6 was not prepared in anticipation of litigation or for trial; rather the report was written in fulfillment of Mr. Cowin's Master's Degree Thesis requirement at the Wharton School of Finance and Commerce at the University of Pennsylvania. Since the information sought from these experts was not acquired in anticipation of litigation or for trial, Rule 26, as I interpret it, would permit their deposition if the liberal requirements of Rule 26(b)(1) [4] are satisfied without necessitating the satisfaction of the more restrictive requirements of Rule 26(b)(4)(A) or (B).

The magistrate apparently based his ruling on a belief that depositions of experts without first satisfying the requirements of subsection (A) or (B) could be conducted only if the experts were deposed in their capacity of actors and/or witnesses to the events giving rise to the suit. There is no doubt that depositions may be freely taken of experts in these capacities without the permission of the court required by Rule 26(b)(4)(A) and (B). According to the advisory committee on the federal rules,

"it should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated an an ordinary witness." Advisory Committee Note, 48 F.R.D. 497, 503. See also *In*

---

**3.** Subdivision (A) provides:

"(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate."

For subdivision (B), *see* n. 1 *supra.*

**4.** Rule 26(b)(1) provides:

"*In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

re Brown Company Securities Litigation, 54 F.R.D. 384 (E.D.La.1972); *Duke Gardens Foundations, Inc. v. Universal Restoration, Inc.*, 52 F.R.D. 365 (S.D.N.Y.1971); Wright and Miller, Federal Practice and Procedure: Civil § 2029 at 250–51.

It is not at all clear, however, that these are the only circumstances under which experts may be deposed without the permission of the court. Nevertheless, in the case at bar the magistrate made a finding of fact, which appeared to be reasonably supported by the evidence that the three deponents were not direct witnesses of nor actors in the events giving use to this lawsuit, i. e. the strike by Grinnell's employees or the payment of unemployment benefits to them by the State. He then concluded, in my view erroneously, that any information they had relevant to the subject matter of this suit could be discovered only through the procedures outlined in Rules 26(b)(4)(A) or (B).

While it is true that the deponents in this case were not witnesses to nor actors in the events giving rise to this litigation, it is equally true that the information sought by the Steelworkers was not acquired or developed in anticipation of litigation or for trial. Whether such information is discoverable without compliance of subsections (A) or (B) is a question apparently never before decided in a published opinion and not addressed by the Advisory Committee on the federal rules or such commentators as Wright and Miller. An examination of the wording of Rule 26, however, and of the policy considerations lying behind this rule concerning both discovery generally and discovery of fact and opinions held by experts leads me to conclude that the Steelworkers need not satisfy the requirements of Rule 26(b)(4)(A) or (B) before taking the depositions in question and need only satisfy the requirement of Rule 26(b)(1).

As mentioned *supra*, Rule 26(b)(4) on its face appears to curtail the discovery of experts only if the information sought was "acquired or developed in anticipa-

tion of litigation or for trial." This interpretation is reenforced by the context and placement of this subsection within the general framework of Rule 26. Subsection (b)(2) covering insurance agreements, (b)(3), covering trial preparation: materials, and (b)(4), covering trial preparation: experts, are clearly intended to be exceptions to the general provisions of 26(b)(1) which permit, without court order, discovery of any matter, not privileged, relevant to the subject matter of the pending action. The very inclusion of the words "trial preparation" in the heading of subsection (b)(4) indicates that discovery of experts is to be limited only insofar as the information sought was obtained for the very purpose of preparing for the litigation in question. There is absolutely nothing in the wording of Rule 26 to indicate that facts or opinion held by experts and not acquired for the purpose of preparing for litigation cannot be freely discovered under 26(b)(1) unless the expert is a witness to or actor in an event underlying the litigation.

This reading of Rule 26 is completely consistent with the policies underlying the federal discovery rules. According to the Supreme Court, the purpose of these rules is to provide a way, consistent with recognized privileges, "for the parties to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 389, 91 L.Ed. 451, 457 (1947). In general the discovery rules have been liberally construed by the courts. Wright and Miller, *supra,* § 2001 at 17. *See,* e. g. *United States v. McWhirter,* 376 F.2d 102, 106 (5th Cir. 1967).

Rule 26(b)(4) was adopted in its present form in 1970 in part to respond to the great disagreements that existed in the courts on the extent to which discovery of expert information was permissible, and it resolved the controversy in favor of much more liberal discovery than was previously permissible. Wright and Miller, *supra,* § 2029. Earlier decisions that held that an expert's information was privileged simply because of

his status as an expert, or that brought expert information within the work product doctrine were completely repudiated by Rule 26(b)(4). *See* Advisory Committee's Note, 48 F.R.D. 497, 504–05. The basis for any restrictions in Rule 26 on the discovery of information held by experts now lie in the doctrine of "fairness". *Id.* at 505. Thus, where it would be unfair for one party to learn through discovery what the other party has paid an expert for, the court can order the party seeking discovery to pay the expert a reasonable fee. Rule 26(b)(4)(C). And where it would be unfair to "penalize diligence" and "put a premium on laziness" by permitting a party to obtain information gathered by his adversary's expert in preparation for trial, such discovery can be permitted only upon a showing that it is impracticable for the party seeking discovery to obtain such information by other means. Rule 26(b)(4)(B).

Where, as in the case at bar, the facts or opinions sought were not prepared for litigation or trial, there is little support for a finding that freely permitting discovery would result in any unfairness to the opposing party. The experts in this case were not being paid by Grinnell when they obtained the information sought by the Steelworkers and certainly Mr. Cowin's choice of topic and source of funding for his Masters thesis was in no way a product of Grinnell's diligence in preparing this case.

### IV

The depositions sought by the Steelworkers, therefore, may be freely taken under Rule 26(b)(1) so long as the information sought is not privileged and is relevant to the subject matter of the litigation. No claim has been made that the information sought is privileged. Grinnell and the three deponents do contend, however, that the Steelworkers sought the depositions for a private purpose, that of harassing the deponent, and not for a purpose of litigation, and the magistrate found it "more probable than not" that this contention was true. As discussed earlier, this review is not *de novo* and I have not referred to any evidentiary material that the magistrate did not have before him. Nevertheless, I must conclude that the magistrate's finding that these depositions were pursued solely for a private purpose is clearly erroneous.

Through their proposed depositions, the Steelworkers hope to discover the facts concerning the inception, initiation, conduct, finalization, financing, and publication of Report No. 6, *Welfare and Strikes: The Use of Public Funds to Support Strikers.* There can be no doubt that this information is relevant to this litigation under the broad standard outlined in Rule 26(b)(1). According to the answers to certain interrogatories served upon Grinnell by the Steelworkers, Report No. 6 is one of Grinnell's most important pieces of evidence in support of certain elements of the case it must prove. Furthermore, Report No. 6 has already been introduced as an exhibit in this case at the hearing on the plaintiff's motion for a preliminary injunction. Certainly the information the Steelworkers sought, which could lead to the discovery of admissible evidence concerning the credibility of Report No. 6 or which could itself constitute such evidence, is relevant to the subject matter involved in the pending action. The magistrate ruled, however, that Grinnell and the deponents were entitled to a protective order under Rule 26(c) to shield them from annoyance, embarrassment, and oppression. Rather than qualify the Steelworkers' right to discovery in one of the less restrictive ways described in Rule 26(c), the magistrate utilized the most restrictive type of protective order available and ruled flatly that the discovery could not be had. At the outset of reviewing his ruling it should be noted that an order to vacate a notice of taking a deposition is generally regarded by the court as both unusual and unfavorable, and most requests of this kind are denied. *Investment Properties International,*

Ltd. v. Ios, Ltd., 459 F.2d 705, 708 (2d Cir. 1972); Wright and Miller, *supra*, § 2037 at 272–75. A showing that the likelihood of harassment is "more probable than not" is in my view insufficient without a concomitant showing that the information sought was "fully irrelevant and could have no possible bearing on the issues." Wright and Miller, *supra*, § 2037 at 275. Grinnell and the deponents have clearly failed to meet their burden. While I am hesitant to conclude as a matter of law that the magistrate's finding of harassment of the deponents as one of the purposes of the Steelworkers in seeking these depositions was clearly erroneous, I cannot accept his finding that another purpose of these depositions was not to uncover evidence relevant to this litigation. Indeed it would border on malpractice on the part of counsel for the Steelworkers not to seek evidence which could help undermine the credibility of such an important piece of evidence in the plaintiff's case as Report No. 6, and the magistrate was clearly in error to conclude that this was not part of the Steelworkers' motivation in seeking these depositions.

Therefore, it is hereby *ORDERED*

1. The motion of Grinnell and the three deponents to dismiss as untimely the Steelworkers' motion for reconsideration is denied.

2. The motion of Grinnell and the three deponents to strike the Steelworkers' motion insofar as it seeks *de novo* review is granted.

3. Grinnell's motion to strike the materials submitted to the court by the Steelworkers on November 13, 1975 is granted.

4. The Steelworkers' motion for review of the magistrate's order, as modified by No. 2 *supra*, is granted and the protective order issued by the magistrate on May 28, 1975, is hereby vacated.

5. The Steelworkers' motion for further discovery is passed.

6. The Steelworkers' motion to expedite decision is passed as moot.